UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JUDITH A. McNIER,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:14-cv-380

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; (2) PRO SE PLAINTIFF'S REQUEST FOR A SENTENCE SIX REMAND BE DENIED; AND (3) THIS CASE BE CLOSED**

---

    This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon *pro se* Plaintiff's Statement of Errors (doc. 10), the Commissioner's memorandum in opposition (doc. 13), the administrative record (doc. 6),[2] and the record as a whole. Because Plaintiff is proceeding *pro se*, her filings and arguments are liberally construed in her favor. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (citations omitted).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record (doc. 6) will refer only to the PageID number.

I.

A.     **Procedural History**

Plaintiff filed for DIB on January 4, 2011 alleging a disability onset date of October 1, 2005.  PageID 350-52.  Plaintiff claims disability as a result of a number of impairments including, *inter alia*, a cervical spine disorder, an affective disorder, and an anxiety-related disorder.  PageID 70.

After initial denials of her application, Plaintiff received a hearing before ALJ Christopher L. Dillon on June 4, 2013, where Plaintiff appeared with counsel.  PageID 198-222.  The ALJ subsequently issued a written decision finding Plaintiff not "disabled."  PageID 182-90.  Specifically, the ALJ's findings were as follows:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2009;

2.    The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of October 1, 2005 through her date last insured of December 31, 2009 (20 CFR 404.1571, *et seq*);

3.    Through the date last insured, the claimant had the following impairments that are severe in combination: cervical spine disorder, right carpal tunnel syndrome (CTS), obesity, affective disorder, anxiety-related disorder (20 CFR 404.1520(c));

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5.    Prior to the date last insured, the claimant retained the [residual] functional capacity ["RFC"] for work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; standing, walking, and sitting for 6 hours each; no climbing of ropes/ladders/scaffolding; no more than occasional ability to perform all other postural activity; no more than frequent reaching but no reaching above shoulder level; no more than frequent handling and fingering with the dominant right upper extremity;

        no exposure to hazards, such as moving machinery and unprotected heights; no operation of a motor vehicle; no more than occasional interaction with supervisors, coworkers, and the public; no more than simple, routine, repetitive tasks performed with adequate persistence that only requires regularly scheduled breaks but with a pace and stress tolerance that allows for no production quotas.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born [in] 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2005, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(g)).

PageID 184-90 (numbering of findings altered for clarity).

      Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 165-67. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff, proceeding *pro se*, then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

### B. Evidence of Record

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 187-88. Plaintiff, in her Statement of Errors, discusses the medical evidence of record as put forth by the ALJ and, additionally, attaches medical evidence to her filing. Doc. 10 at PageID 924-53. Except as otherwise noted, the Court incorporates the ALJ's recitation of the evidence and addresses the evidence submitted with Plaintiff's Statement of Errors when relevant to this Report and Recommendation.

### II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773 (brackets added).

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the

record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

The Court liberally construes *pro se* Plaintiff's Statement of Errors to argue that many of the ALJ's findings are not supported by substantial evidence, including those regarding: Step One of the sequential benefits analysis; her alleged onset date; a vision impairment; the RFC as it pertains to lifting and walking/sitting/standing restrictions; her termination; and evidence of mental impairments. Doc. 10 at PageID 924-27. In addition, Plaintiff attaches medical evidence to her Statement of Errors that "counteract[s] specific statements within the [ALJ] decision" that ultimately found her not disabled. *Id.* at PageID 924. The Court considers *pro se* Plaintiff's submission of these records an implicit request for a Sentence Six remand under 42 U.S.C. § 405(g). *See Martin v. Comm'r of Soc. Sec.*, No. 3:13cv1166, 2014 WL 2114690, at *3 (N.D. Ohio May 20, 2014).

  A.  **Sentence Six Remand**

Initially, the Court addresses the issue of remand pursuant to Sentence Six of 42 U.S.C. § 405(g). "To obtain a [S]entence-[S]ix remand, a claimant has the burden to establish that there is (1) new evidence; (2) which is material; and (3) that there is good cause for the failure to submit it to the ALJ." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013) (citation omitted). The Court is strongly committed to reaching the merits of every case, particularly Social Security disability cases where there is a possibility that a plaintiff is entitled to benefits. *See Goldsmith v. Comm'r of Soc. Sec.*, No. 3:12-cv-191, 2013 WL 3989642, at *5

(S.D. Ohio Aug. 2, 2013).  If there were a reasonable and legitimate basis for such a remand, the Court would grant such a request.  The Court, however, is constrained by the United States Supreme Court's opinion in *Melkonyan v. Sullivan*, 501 U.S. 89 (1991), that holds a Sentence Six remand is permitted only when, *inter alia*, the medical records in question are "material" to the question of Plaintiff's disability.  *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483-88 (6th Cir. 2006).

Plaintiff submits 34 pages of medical records in support of her Statement of Errors.  Doc. 10 at PageID 924; doc. 10-1; doc. 10-2; doc. 10-3; doc. 10-4; doc. 10-5; doc. 10-6; doc. 10-7; doc. 10-8.  The vast majority of these records, however, were part of the administrative record before the ALJ[3] and, therefore, do not constitute "new" evidence and cannot be the basis for a Sentence Six remand.  *See Lee*, 529 F. App'x at 717.  The only "new" evidence Plaintiff submits consists of undated records, namely one urgent care note documenting "crying [and] anxiety" and another record showing, *inter alia*, "crying spells [and] thoughts of death," and a diagnosis of post-traumatic stress disorder ("PTSD").  Doc. 10-7 at PageID 946, 950-51.  The records submitted also contain mental health treatment notes from 2014, *i.e.,* records concerning treatment five years after Plaintiff's date last insured ("DLI").  *Id.* at PageID 947-49.

In order to qualify for DIB, a claimant must "establish the onset of disability *prior* to the expiration or his [or her] insured status[,]" *i.e.,* prior to his or her DLI.  *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984) (citation omitted) (emphasis in original).  Consequently, medical evidence concerning a time after a claimant's DLI "is only minimally probative."  *Jones v.*

---

[3] *Compare* doc. 10-1 at PageID 928 *with* PageID 444; *compare* doc. 10-2 at PageID 929 *with* PageID 803; *compare* doc. 10-3 at PageID 930-33 *with* PageID 544-45, 470-71; *compare* doc. 10-4 at PageID 934-35 *with* PageID 784-85; *compare* doc. 10-5 at PageID 936-40 *with* PageID 426-27, 442; *compare* doc. 10-6 at PageID 940-45 *with* PageID 377-78, 454-55, 518-19; *compare* doc. 10-8 at PageID 952-53 *with* PageID 528-29.

*Comm'r of Soc. Sec.*, No. 96-2173, 1997 WL 413641, at *1 (6th Cir. July 17, 1997) (citation omitted). Such evidence can "only [be] considered to the extent it illuminates a claimant's health before the expiration of his or her insured status." *Id*. (citation omitted). Plaintiff fails to make any argument in this regard or otherwise demonstrate how the records presented are "material" -- particularly in light of the ALJ's acknowledgement that Plaintiff's mental health deteriorated in the years following her DLI. PageID 186, 188.

Accordingly, the undersigned recommends that Plaintiff's implicit request for a Sentence Six remand be denied. *Cf. Sustaita v. Comm'r of Soc. Sec.*, No. 1:08-CV-566, 2009 WL 3153157, at *6 (W.D. Mich. Sept. 25, 2009) (denying a Sentence Six remand, in part, on the basis that Plaintiff "fails to discuss, let alone demonstrate, the materiality and good cause necessary for such a remand"); *see also Blair v. Comm'r of Soc. Sec.,* No. 3:13-cv-105, 2014 WL 3732959, at *7 (S.D. Ohio July 25, 2014).

### B. Whether Specific ALJ Findings Are Supported by Substantial Evidence

Next, Plaintiff argues that many of the ALJ's findings are unsupported by substantial evidence. Doc. 10 at PageID 924-27. The undersigned addresses each argument in turn.

#### 1. Step One

Plaintiff first argues that the ALJ unreasonably found, at Step One of the sequential benefits analysis, that she had not engaged in substantial gainful activity from her alleged onset date until her DLI. Doc. 10 at PageID 924-25. However, as noted by the Commissioner, a finding that Plaintiff engaged in substantial gainful activity during the relevant time period would have doomed her DIB claim at the outset. *Barnhart*, 475 F.3d at 730. Regardless, Plaintiff testified that she had not worked since her alleged onset date. PageID 205-06. Accordingly, the undersigned finds no error at Step One.

### 2. Alleged Onset Date

Next, Plaintiff argues that the ALJ erred in determining her alleged onset date, *i.e.*, October 1, 2005, because her symptoms began in 1999 when she suffered a workplace injury. Doc. 10 at PageID 925. However, in her application for DIB, Plaintiff stated that her disabling condition began on October 1, 2005, and neither Plaintiff nor her attorney challenged the October 1, 2005 onset date when the ALJ raised it at the administrative hearing. PageID 198, 350. Further, Plaintiff repeatedly stated that she worked 40 hours per week from 1999, *i.e.*, when she sustained her injury, until October 2005. PageID 205-06, 387, 392-93. Accordingly, the undersigned finds the ALJ's determination of Plaintiff's alleged onset date supported by substantial evidence.

### 3. Vision Impairment

Plaintiff claims that the ALJ unreasonably concluded that there was no "mention in the record that [Plaintiff] had vision problems" prior to her DLI in finding that she did not have a "severe" vision impairment at Step Two. Doc. 10 at PageID 925; PageID 185. In so arguing, Plaintiff cites to a May 2005 treatment note identifying, *inter alia*, "blurred vision." Doc. 10 at PageID 925; doc. 10-2 at PageID 929; PageID 803. Even assuming, *arguendo*, that the ALJ overlooked this note, the undersigned finds any such error harmless. There is no indication that Plaintiff's "blurred vision" -- noted on a single occasion -- "significantly limit[ed] [her] physical . . . ability to do basic work activities" during the relevant time period. 20 C.F.R. § 404.1520(c) (defining "severe" impairment). Even after Plaintiff's DLI, there is no medical opinion suggesting that Plaintiff has vision-related limitations. Based on the foregoing, the undersigned finds no reversible error with regard to the ALJ's analysis of any potential vision-related impairment.

    **4.**    **Lifting Restriction**

Plaintiff claims that the ALJ erroneously found that she had the capacity to lift 20 pounds frequently. Doc. 10 at PageID 925. However, the ALJ never concluded that she was capable of lifting 20 pounds frequently. *See* PageID 186, 188. In fact, the ALJ specifically stated:

> [t]he combination of [Plaintiff's] cervical spine disorder is exacerbated by her obesity and her right carpal tunnel syndrome, and require that she be restricted to lifting or carrying no more than 20 pounds *occasionally*, though she can frequently lift or carry objects weighing up to 10 pounds.

PageID 188 (emphasis added). Therefore, the undersigned finds no merit to Plaintiff's argument in this regard.

    **5.**    **Standing, Walking, Sitting Limitations**

Next, Plaintiff contends the ALJ's finding -- that she can stand, walk, and sit for six hours each -- is unsupported by substantial evidence. Doc. 10 at PageID 925. In so arguing, Plaintiff references: (1) part of her treating physician Shadida Aziz-Khan, M.D.'s April 2013 opinion; (2) March 2004 and April 2006 opinions from her treating physician, Katherine McKee, M.D.; and (3) medical records from Martin Betram, M.D., Dr. McKee, and Dr. Aziz-Khan. Doc. 10 at PageID 925; doc. 10-3 at PageID 930-33; doc. 10-4 at PageID 935; PageID 544-45, 470-71, 784-87.

First, Plaintiff claims the ALJ erred because Dr. Aziz-Khan opined that she is limited to sitting, standing, and walking only one hour each in an eight hour workday. Doc. 10 at PageID 925; PageID 785. However, the ALJ rejected Dr. Aziz-Khan's opinion because it was provided over three years after Plaintiff's DLI, and there was no indication that Dr. Aziz-Khan treated Plaintiff prior to her DLI. PageID 188. The undersigned finds no error in the ALJ's analysis of Dr. Aziz-Khan's opinion. *See Jones*, 1997 WL 413641, at *1 (citations omitted).

10

Second, Plaintiff argues that the ALJ's RFC finding is contradicted by two opinions from Dr. McKee, which show that her functional capabilities decreased from 2004 to 2006. Doc. 10 at PageID 925; doc. 10-3 at PageID 930-33; PageID 544-45, 470-71. However, as noted by the Commissioner, the ALJ adopted the limitations in Dr. McKee's more restrictive 2006 opinion -- including, *inter alia*, a restriction to occasional lifting of 20 pounds and a prohibition from reaching above shoulder level. *See* PageID 186, 544. Further, and notably, in both opinions Dr. McKee opined that Plaintiff could "continuously" stand, walk, and sit. PageID 544, 471.

Finally, Plaintiff alleges -- without citing to any specific record -- that "medical records from [Drs. Betram, McKee, and Aziz-Khan] show a link between [her] neck pain and the progression of arthritis which led to an increase in lower back pain causing[] leg pain, leg, ankle, [and] feet swelling[.]" Doc. 10 at PageID 925. A thorough review of the record reveals one potentially relevant piece of evidence -- a June 27, 2007 treatment note from Dr. McKee stating:

> [s]he is also complaining of still a lot of swelling in her feet and ankles . . . . We have changed quite a few of her medications, and I am wondering if she is having difficulty with that. I have adjusted her Lyrica down to 75 mg 4 times a day and taking her Flexeril t.i.d. and Trazodone 150 at h.s. We had also changed her Naprosyn 500 b.i.d. after stopping her Celebrex. Any number of these things could be possibly causing some of the swelling in her feet and ankles, like the Naprosyn and Lyrica.

PageID 440. This treatment note does not, however, undermine the ALJ's RFC finding because it fails to connect Plaintiff's neck pain to her feet and ankle swelling. *See id.* Furthermore, Dr. McKee opined on the same day that Plaintiff had no restrictions with standing, walking, or sitting. PageID 435.

Based on the foregoing, the undersigned finds the ALJ's RFC determination regarding Plaintiff's walking, standing, and sitting limitations supported by substantial evidence.[4]

### 6. Plaintiff's Employment Termination

Plaintiff next argues the ALJ erroneously found that she was terminated in October 2005 because of unexcused absences. Doc. 10 at PageID 925-26. According to Plaintiff, she was terminated because her employer did not have work for her. *Id*. However, Plaintiff testified that "the doctor took me off work for a week, and while I was off they said I was terminated because I didn't call in[.]" PageID 206. Based on this testimony, the undersigned finds no error in this regard.

### 7. Mental Impairments

Finally, Plaintiff appears to challenge several of the ALJ's mental-health related findings. Doc. 10 at PageID 926. In this regard, the ALJ found that Plaintiff's

> depression and anxiety are not well documented in the record, but her testimony is corroborated to some extent by the records of Dr. Aziz[-Khan], her presentation at the hearing, and her documented treatment with Zoloft. The claimant did not indicate any particular difficulties getting along with coworkers, supervisors, or the public, but she has been restricted to occasional interaction to accommodate diminished stress tolerance due to anxiety and depression. Furthermore, due to the impact of her mental impairments on her ability to focus and concentrate, she has been restricted to simple, routine, repetitive tasks that require only regularly scheduled breaks, but that is not fast-paced and that does not require production quotas.

PageID 188. The undersigned finds no merit to Plaintiff's argument because she does not explain what limitations the ALJ erred in excluding, or point to any evidence within the

---

[4] To the extent Plaintiff argues that a 2014 treatment note stating "client having pain in tailbone interfering with sitting [and] standing" supports greater restrictions, the undersigned finds no merit to Plaintiff's contention. *See* doc. 10 at PageID 925; doc. 10-7 at PageID 947. This evidence postdates Plaintiff's DLI by nearly five years; was not in the record before the ALJ; and gives no indication that Plaintiff was limited in her ability to sit, stand, or walk during the relevant time period.

applicable time period suggesting that she has additional mental-health related restrictions. *See* doc. 10 at PageID 926.

Plaintiff also challenges the ALJ's finding, at Step Three, that her mental impairments did not meet or medically equal Listings §§ 12.04 and 12.06 for affective disorders and anxiety-related disorders. Doc. 10 at PageID 926; PageID 185-86; 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. The ALJ found that Plaintiff had no restriction in activities of daily living; moderate difficulties in social functioning and concentration, persistence, and pace; and had experienced no episodes of decompensation of extended duration. PageID 185. Plaintiff challenges these findings by detailing her difficulties with daily activities and interacting with the public, but cites to no medical evidence supportive of a disability finding at Step Three. *See* doc. 10 at PageID 926. Plaintiff has the burden of proving that she meets or equals all of the criteria of a listed impairment, *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987), and she has not done so here. Accordingly, her final argument should be overruled.

## IV.

For the foregoing reasons, the Court finds Plaintiff's assignments of error unmeritorious.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**;

2. *Pro se* Plaintiff's request for a Sentence Six remand be **DENIED**; and

3. This case be **CLOSED** on the Court's docket.

Date:   February 3, 2016                         *s/ Michael J. Newman*
                                                 Michael J. Newman
                                                 United States Magistrate Judge

13

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).